The opinion of the Court was delivered by
Wardlaw, J.
The Law Court of Appealshaving found the other grounds of appeal insufficient, has referred to this Court the question concerning the competency of William Epting, presented by the first ground of appeal. The will of the testator, George J. Cannon, disposes of both real and personal estate, and so falls under the designation of a mixed will. William Epting is one of eight children of Mrs. Wicker, a sister of the testator. To these eight, equally to be divided among them, is given by the will one-third of three-fourths of one-half of the testator’s whole estate, real and personal, except two pecuniary legacies : so that William Epting is devisee and legatee of one undivided sixty-fourth part of the whole estate remaining after deduction of the two pecuniary legacies. Was he, under our Act of 1824, (a) a credible witness — competent to attest the will ?
The case is not one directly involving the validity of all or of any of the devises in the will: but it comes up by appeal from the Ordinary’s decision on the question of granting probate, and so may be said to involve directly, only the executrix’s right to administer the personalty, according to the testamentary authority and directions given, to her, by the instrument which she propounds.
The argument in her behalf is simple : — The will has been executed according to the formalities prescribed by the Act,— *474 the three attesting witnesses will be deemed to have been competent unless incompetency be shown, — the only ground of incompetency suggested affects William Epting alone, and is the imputation to him of an interest in the instrument, which he attested, arising from a beneficial devise and legacy thereby given to him; — but by the Stat. 25 Geo. 2, c. 6,(b) that devise and legacy is made “ utterly null and void,” and therefore the witness stands free from all objection, just as if nothing. had been given to him by the will.
The simple statement of these propositions carries a force which I cannot increase by illustration. It is acknowledged, that the conclusion drawn from them would be irresistible, if the question concerned the real estate, as if in an action before a Court of law, William Epting was called to sustain the will as a link in a chain of title, adduced by, or under, another one of the devisees, to a parcel of the land devised. But it is urged, in opposition to the grant of probate, that the Stat. of Geo. 2 was intended only to remove doubts which had arisen concerning the attestation of devises under the Stat. 29 Charles 2, and by the removal to save devises: that the Stat. of Geo. 2, enacted long before our Act of 1824, and not embracing the subjects of that Act, could not have referred to it, and was not incorporated into it: that the statute has been held, in England and in this State, not to be applicable to wills of mere personalty: that upon a question of probate, every will must be regarded as one of personalty only, inasmuch as a Court of probates has no power over devises: and that, therefore, we must, in deciding this question, be blind to the devises, and read the will, as if no devises were written on its face, or, as if it had been established that the lands mentioned had no existence : — consequently that the witness, appearing to be a legatee, was incompetent under our Act at the moment of attestation, and so the will has not been attested by three credible witnesses.
It may be conceded, (for Sir John Nicholl in Brett vs. Brett,(c) has made it too plain for denial,) that before our Act of 1824, if legatees had attested a will of mere personalty, to which no at *475 testing witnesses were, by the law as it stood, required, the will, when proved by other witnesses, would have been good for those legatees, so that they might have recovered their legacies. The Stat. of Geo. 2 would not have made the legacies void, for a will of mere personalty, although embraced by the words “ any will or codicil,” used in the statute, did not fall within the general scope of the statute, nor within its purpose plainly expressed, nor within the mischiefs it was intended to remedy. But if the will had contained a devise, the case would have been totally different; for various parts of the statute, especially the words “legacy” and “personal estate” in the enacting part of the first section, and the whole of the third, fourth, fifth, seventh and eleventh sections, put beyond the possibility of misconstruction, the intention of the legislature to embrace mixed wills; cases of mixed wills, where trifling legacies, given to servants and friends who become attesting witnesses, made void or endangered valuable devises, were the very cases out of which grew the mischiefs that the statute provided against, and the mode of remedy adopted was to sacrifice a part to preserve the remainder, — to save the will by making void whatever beneficial interest in realty or personalty was given by it to any person who attested it. After the legacy given to an attesting witness of a mixed will had been by the statute made void at the time of attestation, so that to sustain a devise in a common law Court, it would have been regarded as if it had been expunged from the will before the execution, and the legatee would have been admitted as a credible witness who never had had interest in the instrument, can it be supposed possible that the legatee could, in an ecclesiastical Court, have recovered his legacy 1 Made utterly null and void by statute, the legacy could have no validity anywhere or for any purpose. It is said, that no decision can he found to this effect — that no case in any ecclesiastical Court of England shows that a legacy there has been denied because it was made void by the statute. If this is so, I attribute it to the plain reason, that no proctor has been hardy enough to bring before a Court the claim of a legatee, who attested a mixed will, or no reporter has thought the rejec *476 tion of such a claim worthy of notice. The ecclesiastical Courts ■are bound by statute no less than the common law Courts. It would wholly abrogate the plain provisions of the legislature, to say, that the legacy should be held void, when the question concerned a devise in a common law Court, that could not enforce the payment of a legacy, but should be held valid when its validity was really to be tested in a Court that could make an effective decree concerning it. Under such a construction, how could the statute be said to have taken away the interest of the legatee so as to make him a competent witness to the devise, — to have removed his bias by destroying all benefit he might otherwise have derived from the instrument he attested,— when for the purpose, and on the occasion important to him, the intent and benefit still subsisted as if the statute had not been passed ? The 7th sec. of the statute, (referring to the diverse provisions which, in preceding sections, had been made for wills executed after, and those executed before 24th of June, 1762,) in substance enacted, that no person, whose beneficial interest under a will is, by the statute, made null and void, or, who, under the statute, is barred of a legacy after tender and refusal, shall, after he has been examined as a witness concerning the execution of such will, take or receive any profits or benefits from such beneficial interest, or demand or receive “ any such legacy or any satisfaction or compensation for the same, in any manner or under any color or pretence whatsoever.” The examination here meant, (as reference to the 6th section will show) is an examination before a common law Court or Court of Equity, having under consideration a devise in the will; and it has been supposed, that the inference from the 7th section is, that before such examination, a legatee may recover his legacy and is not divested of his interest under the will. It is, however, plain that this very section treats the legacy as already void before the examination, and the cumulative enactment against the legatee’s enjoyment after his examination, contains no admission of his right prior thereto, but was probably designed to guard against agreements which might be made between a devisee and the attesting legatee, and against every device and *477 pretext under which a bias might be felt by a witness examined concerning the execution of a will. The cases which have established that the statute does not apply to a will of mere personalty,(d) as it seems to me, impliedly admit that it must necessarily embrace mixed wills, and starting from that admission, they proceed to make a sound distinction.
It is said, however, that it is unimportant to the devises, whether probate is granted or not: that under our Act of 1789 (5 Stat. 106,) as under the statute of 29 Char. 2, a mixed will, not properly executed so as to pass real estate, might have been good as a testament to bequeath the legacies : and that under the Act of 1824 new formalities for the execution of wills of personal property are prescribed, but still the distinction between them and devises subsists ; and that therefore, the competency of a witness to attest the devises being established, his competency to attest the legacies does not follow.
All the premises of this argument might be admitted, although various Acts of legislation is this State(e) seem to contemplate some action of the Ordinary about every will, not noticing the case, unlikely to occur, of a testator whose will would contain nothing but devises, and who would leave no personalty at all to be administered by an executor. Even the conclusion might be admitted, that under special circumstances, a witness would be competent to attest a will of one kind of property and not of the other(f): hut when the only objection is one of interest, and that was removed at the moment of attestation, the witness, stands equally unobjectionable in regard to both kinds. The error of all such reference to a legatee’s unconcern in a question affecting the devises, results however from not keeping in view the principle upon which a person who takes a benefit *478 under a will has been held incompetent to attest it. It is because he is supposed to have an interest in the instrument, and therefore not to have been at the time of attestation free from bias, so as to be safely trusted in the delicate duty, which is imputed to the attesting witnesses of a will, of guarding the testator from imposition. Every benefit given by a testamentary paper, however great in expectancy, depends upon the contingency of the testator’s dying without revoking it. Wherever then, in a contest inter alios, an attesting witness has been held insufficient because of a benefit given to him by the v ill, a departure from the ordinary rules of evidence has been map . both in ascribing to an interest in the question an effect whr .*1 ordinarily follows only an interest in the result of the suit, and in giving to an uncertain and contingent interest the influence of a certain one. This anomaly has resulted from the essential difference between attestation and proof, from the construction which the words “credible witnesses” used in the Stat. 29 Char. 2, have received, and from the application to the provisions of that statute concerning devises of the rules, which, before it, had regulated the admission of witnesses to prove wills in the Ecclesiastical Courts. The friend to whom a mourning ring was bequeathed, and the servants whose fidelity had been, rewarded by small legacies, became attesting witnesses to a will: they had no interest in immense estates devised by the instrument, but the devises failed, because of their incompetency to attest: and yet, wholly incompetent as they were to establish the will in a contest between the heir and devisee, they could, by the proof of other witnesses, have recovered their legacies in the Ecclesiastical Court under the will which would have shrunk into a mere testament requiring no attestation. If their supposed interest in the instrument thus incapacitated them from attesting the devises, how much more clearly would it have unfitted them from attesting the legacies, in case the legacies had required attestation: and if their attestation was insufficient in a contest, the result of which in no way affected them, much less would it, if required at all, have availed in the very proceeding which was to determine the question *479 involving their interests. As to the effect of the Statute of Geo. 2., it is then an unimportant consideration, that a question concerning the devises does not affect a legatee. One devisee may not be affected by a decision concerning the devise made to another. But that statute assuming that, as decided in Anstey vs. Dowsing, (g) all who had a beneficial interest in the instrument were incompetent to attest, swept away every such interest given to an attesting witness ; and thenceforth the witness, freed from the imputation of bias, became credible under either tbb Statute of Char. 2, or any subsequent statute, if he was able to no other objection. ,, ,,,w
Our Act of 1824 speaks of “all orpersonal property: ” and a narrow constrfbtHwioí it wohlehclnfine its requisitions to wills of mere personaltir h^xchj,siomqf Jnixed wills. This would not be contrary t<§ tíf! rett^n's'isfhi construction which excludes mixed will; $ the Statute of Geo. 2. But both con stations are wrogjf; the former would almost repeal the Act latter leave few cases for the operation of the Statute of Geo. 2.
The case of Workman vs. Dominick, (h) decided in this Court, has held that the Statute of Geo. 2. is not applicable to a will of mere personalty. There one of the attesting witnesses of a will made by a testatrix, who had no real estate, was nominated executor, but was never qualified. The will was not admitted to probate. If the statute had not been of force, the will must have been held bad under the Act of 1824, unless one of two conclusions could have been adopted ; either that a discretion was entrusted to the witness to make the will bad or good as he pleased, by qualifying and accepting commissions, or not doing so ; or that an executor, with or without commissions, takes no interest in the personalty such as would create the' interest in the instrument that is held to produce disqualifying bias at the time of attestation. Holding the statute to be of force, but inapplicable to a mere testament, and the nomination of the witness as executor, to be cause of disqualifying bias, the Court did not consider the questions concerning the eilect which *480 .the statute, in a case where it was applicable, would have upon an attesting executor; whether it would take away only his commissions or his office also, or whether either commissions or office is a beneficial interest given by the will upon which the statute could operate or whether an executor, even when stripped of beneficial interest, could be competent by his own attestation to confer powers upon himself. The case of an attesting legatee is much plainer than that of an executor, and the principle settled in Workman vs. Dominick, establishes that the incompetency of such legatee in a will of mere personalty, is not removed by the statute. But wills of mere personalty are rare: wherever a testator has any real estate, any will is likely to affect it, even though no mention be made of it, either by preventing account of advancements, or by changing the order in which the assets, real and personal, would, in case of intestacy, have been liable to debts; and wherever the real estate is affected by the will, there is a devise, and the Stat. of Geo. 2 is applicable.
A subsequent case of Moore vs. Me Williams, in the Court of Equity, (3 Rich. 10,) proceeded upon the distinction between a mixed will and a will of mere personalty, but seems to have overlooked a distinction between a benefit given to an attesting witness and one given to his wife, — between “ any person claiming under him,” and any person under whom he claims. (See Hatfield vs. Thorp, 5 Barn. & Ald. 589.)
The embarrassment felt in the decision of the case now under consideration,-has proceeded from the difficulty of reconciling the decision with the case of Taylor vs. Taylor, 1 Rich. 531, also decided in this Court. It is impossible to produce agreement between this opinion, and the opinion pronounced by Judge Frost, the organ of the Court on that occasion, for the two are in direct conflict concerning the applicability of the Stat. of Geo. 2 to the case of a mixed will. It may be, however, that the result of this case is not inconsistent with the result in that: and it is only for the result of either that the Court is responsible. There, one of the three attesting witnesses to a *481 mixed will was nominated executor, was qualified, received commissions and died. The will being offered for proof in solemn form, was rejected because of his incapacity to attest. The opinion of the Court appears to proceed upon the ground, that the Statute of Geo. 2 is applicable to devises only, and has no effect upon the competency of a witness adduced in a Court of Probates. It concludes thus :
“ The opinion of a majority of the Court is, that one appointed executor, by his right to commissions, takes an interest by the will, which renders him an incompetent attesting witness under the Act of 1824: and that the Stat. 25 Geo. 2, c. 6, is of force in this State: but the competency of the attesting witness is not thereby restored.”
“ The decision of the Circuit Court is reversed, and it is ordered that judgment be entered on the special verdict in favor of the appellants from the decision of the Ordinary.”
Nine of the Judges of the Court were present. Of these, six concurred in the result or final order, three dissented from it. Of the six, two signed Judge Frost’s opinion, and another wrote a separate opinion, which the two others signed, holding that whether the statute was or was not of force, the witness was incompetent, but entering into argument to show that the statute was not of force. The three dissentients all agreed that the statute was of force, and held that, under its provisions, the witness was competent — two holding that it took away both office and commissions, the third that it took away only the commissions, leaving the executor without beneficial interest to induce bias.
It will be seen, that the majority which affirmed the conclusion above quoted, that immediately precedes the final order, was variously constituted upon the various propositions contained therein.
Upon what grounds the three, who held the statute not to be of force, rested their opinion that, even if it was of force, the witness was not competent to attest, (if indeed they all entertained that opinion,) I cannot say: — but when I wrote my dis *482 senting opinion, I thought that some members of the Court were chiefly affected by the argument, that one nominated as executor, was capable of acquiring such extensive powers over the testator’s property, and was so directly a party in all questions of probate, that, independent of considerations of beneficial interest, there was impropriety in his giving effect to the nomination by his own attestation.
Of the opinions of the two Chancellors, who signed Judge Fkost’s opinion, I am, however, authorized to speak with more certainty. Chancellor Dunkin was of opinion that the statute, by its terms, embraced any person attesting the execution of a will, to whom a beneficial interest is directly given thereby, but not a person who may receive a benefit indirectly in consequence of such will: and as the husband or wife of an attesting witness is not embraced by the statute, (see Hatfield vs. Thorp, 5 Bam. & Ald. 589; Bettison vs. Bromley, 12 East, 250,) so an executor is not: — for where the residue was disposed of by the will and he owed no debt to the testator, the executor, by the law of England, took no beneficial interest whatsoever, and the commissions, given to him by our Acts of Assembly, do not constitute a beneficial interest given to him by the will. Chancellor Johnston thinks, that the_ distinction between a mixed will and a will of mere personalty, was altogether overlooked; in the decision of Taylor vs. Taylor.
It will be seen, that there are differences between the ease of an executor and that of a legatee, which may sustain the result in Taylor vs. Taylor, whilst in this case it is held that a legatee attesting a mixed will, is, by the Statute of Geo. 2, made competent.
Some members of this Court, who will not sign this, opinion, think that the Statute of Geo. 2 is applicable to the case of a mixed will, but believe that it is better to adhere to what was announced as the opinion of the Court in Taylor vs. Taylor, than to overrule that case singly, as they suppose this opinion will do. They would be willing, however, for the purpose of producing uniformity in the operation of the law of wills upon *483 the two kinds of property, real and personal, to overrule both the case of Taylor vs. Taylor, and that of Workman vs. Dominick: and to hold that the Statute of 29 Char. 2, our Act of 1789, the Stat. of 25 Geo. 2, and our Act of 1824, are all to he construed in pari materia, so as to make one consistent system. Other members of the Court are, however, strenuously opposed to this : they earnestly desire a uniformity and simplicity in the law, but dare not venture upon what they conceive would he legislation. The Act of 1824 they belive, by adopting the term credible, has adopted the signification which that term had received in reference to devises, and admits, for attestation of a will under the Act, a witness, who, by the law existing at its enactment, was divested of all interest in the instrument: but they cannot perceive, that therefore the Act transfers to wills of mere personalty; upon which it alone operates, the mode of making a witness competent which had been previously provided for devises. The mode plainly confined to cases where there are devises, they feel no authority to extend to a case where there is no devise ; and the remedy specially adapted to the Stat. of Char. 2, they cannot insert in an Act which gives no indication of an intention to adopt it. To the legislature it belongs to extricate the whole subject from the perplexity in which legislation has involved it. Although we have seen that few cases of wills of mere personalty, and therefore few cases of the diverse operation of the Statute of Geo. 2 upon the two kinds of property, are likely to occur, it is much to be regretted that any such case shall be possible; for on no subject, should the law be more simple than concerning the execution of wills, and in no way is gross injustice, contrary to the true intention of a testator, more likely to be effected, than by setting aside his will as to one kind of property, and holding it good as to the other.
On this occasion, as on previous ones, the Court has been strongly pressed by denunciations of the Statute of Geo. 2, for its unjust operation. There is no longer any doubt about that statute’s being of force : — its expediency is not a question for a *484 Court. To all the members of this Court, except one, it however appears that, in the main, the statute is wise and beneficent. It may often save wills from destruction, and thus prevent great wrong. If we overlook the cases out of which the necessity of its enactment originally sprung, and forgetting the mischiefs it provides against, confine our attention to a case where a child or other person has innocently become attesting witness of a will, who, if that will had not been executed, would have received a share of a testator’s estate, the hardship claims our sympathy and provokes indignation against the law, when we see both that share and the benefit given by the will, taken from the witness by the combined operation of the will and of the statute. In such case, so much of the share, that would have been received if that will had not been executed, as does not exceed the value of the benefit given by the will, might be saved out of that benefit for the witness, and still the freedom of the witness from bias be secured, and the necessity of the Court’s entering into an account of the estate, in order to decide the question of his competency, be obviated. An amendment to this effect would probably remove much of the evil, which the statute in its sweeping phraseology, brings along with the remedy it affords for other ills. To this Court however, it belongs to expound and apply the law; amendments of it, and more especially of statute law, however desirable they may appear, must be referred to the wisdom of another branch of the government.
It is the opinion of the Court that William Epting was competent to attest the will of George J. Cannon, and that there was no error in the ruling of the Circuit Judge on this subject.
The motion is dismissed.
Johnston, Dunkin, Dab.cían and Wardlaw, CC., and Whitner, J., concurred.
Withers, J.
It cannot now be disputed, that the Statute of George 2 is of force. I believe it applies to mixed wills. At the time of its passage, it could have contemplated such, and one purely of devises only, for no attesting witnesses to legacies were necessary then. But I conceive our Act of 1824 is *485 substantially this: Be it enacted, that the law of attesting wills of personalty shall he the same as that prescribed for wills of realty under the Statute of Charles 2.
The law therein prescribed was affected by the subsequent Statute of 25 George 2, and I think that qualifying law was imported by the Act of 1824 into the subject matter to which it related — the same having theretofore become incorporated into the Statute of Charles 2, which last, with its incident, was thus imported into the legislation of 1824.
I agree, on this point, with what was announced, in Taylor and Taylor, by Justices Evans and Butler.
Glovek, J., concurred.
Motion dismissed.

 6 Siafc. 238.

 2 Stat. 580.

 3 Adams, 210.

 Brett vs. Brett, 3 Add. 210; Emanuel vs. Constable, 3 Russ. 436; Foster vs. Banbury, 3 Sim. 40.

 1789, sec. 7 and 12, 5 Stat. 106: 1823, 6 Stat. 209: 1839, 11 Stat. 41.

 Henderson vs. Kenner, 1 Rich. 531, in the Law Court of Appeals; and Douglass vs. Brice, 4 Rich. Eq. 322, in the Equity Court of Appeals, held an attesting executor competent to make the instrument good for realty but not personalty; and perhaps Taylor vs. Taylor 1 Rich. 501, in the Court of Errors, prior to both the others, recognizes the same distinction.

 Strange, 1253.

 3 Strob. 589.